**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAIJON P.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>*Defendant*. | Case No. 25-cv-00848<br><br>Hon. Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Daijon P.'s[1] application for Supplemental Security Income ("SSI"). This case was assigned to the Hon. Beth W. Jantz in accordance with Local Rule 73.1(c). (Dkt. 10.) For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. 18) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

On December 15, 2021, Plaintiff Daijon P. filed an application for SSI, alleging disability beginning August 28, 2020. (R. 17, 159, 161.) The claim was denied initially on July 28, 2022, and upon reconsideration on December 1, 2022. (*Id.* at 17, 84, 90.) Plaintiff requested a hearing, which Administrative Law Judge Edward Studzinski held by telephone on July 26, 2023. (*Id.* at 31–64.) Vocational expert James Breen also appeared and testified. (*Id.*)

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

On October 26, 2023, the ALJ issued his decision denying benefits. (R. 14–26.) In his written decision, the ALJ applied the five-step sequential evaluation process for Title XVI claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2021. (*Id.* at 19.) At step two, the ALJ found that Plaintiff had the following severe impairment: complex regional pain syndrome of the right upper extremity. (*Id.*) At step three, the ALJ found that no Listing was met or medically equaled. (*Id.* at 20.)

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 6 out of 8 hours; and sit for a total of about 6 out of 8 hours. (R. 20–24.) The ALJ found that Plaintiff could never crawl or climb ladders, ropes, or scaffolds. (*Id.*) His nondominant left upper extremity was found to be unimpaired. (*Id.*) With his right upper extremity, the ALJ found that Plaintiff could occasionally pinch with his thumb and index finger, and occasionally use his right upper extremity to assist his left upper extremity. (*Id.*) The ALJ determined that Plaintiff could perform fine and gross manipulation frequently but not constantly, and was incapable of forceful grasping or torquing. (*Id.*) The ALJ limited Plaintiff to working in non-hazardous environments, with no driving at work, operating moving machinery, or working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery. (*Id.*)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. 24.) At step five, relying on the vocational expert's testimony, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, including parking lot attendant, clothing sorter, and mail clerk. (*Id.* at 25–26.) The ALJ therefore concluded that Plaintiff was not disabled since December 15, 2021, the date the application was filed. (*Id.* at 26.)

Plaintiff sought review by the Appeals Council, and his request for review was denied on November 26, 2024, rendering the ALJ's decision the final decision of the Commissioner. (R. 1–3.) Plaintiff challenges the Commissioner's final decision denying his Title XVI application for SSI, and the matter is before this Court for judicial review. (*See generally* Dkt. 1.)

**DISCUSSION**

## I. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## II. The ALJ's Evaluation of the State Agency Physician's Prior Administrative Medical Finding Was Insufficient

Plaintiff raises three principal challenges to the ALJ's decision. Plaintiff contends that the ALJ erred by: (1) failing to properly consider whether his complex regional pain syndrome

medically equaled a listed impairment; (2) failing to adequately explain the rejection of the non-examining state agency physician's manipulative limitations; and (3) relying on unreliable vocational expert testimony. As discussed below, because the ALJ's analysis of the state agency physician's assessment alone warrants remand, the Court will not address, and thus makes no ruling on, Plaintiff's remaining arguments.

For claims filed after March 27, 2017, the ALJ does not defer to or give any specific evidentiary weight to any medical opinions or prior administrative medical findings. 20 C.F.R. § 416.920c(a). Rather, the ALJ must articulate how persuasive he finds all such opinions and findings in the record. 20 C.F.R. § 416.920c(b). In evaluating persuasiveness, the most important factors are supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 416.920c(b)(2); *see Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025). Supportability concerns the extent to which objective medical evidence and explanations support the opinion, while consistency concerns the extent to which the opinion aligns with other medical evidence in the record. *See Cain*, 148 F.4th at 497. Although the ALJ's articulation burden is minimal, the decision still must provide enough explanation to permit meaningful judicial review. *See Warnell*, 97 F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). The ALJ also must confront evidence that does not support his conclusion and explain why it was rejected. *See Cain*, 148 F.4th at 497 (quoting *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018)).

Here, the state agency physician at reconsideration,[2] Dr. Bilinsky, opined that Plaintiff could perform light work but could not perform handling, fingering, or feeling with the right upper

[2] At the initial review, the state agency physician, Dr. Reynaldo Gotanco, determined that "[d]ue to R hand impairment after being stabbed in the hand multiple times in 08/2020, clmt should be limited to occasional use of R hand for fine and gross manipulations." (R. 70.) However, after Plaintiff requested reconsideration of his initial denial, (*id.* at 88), another state agency physician, Dr. Richard Bilinsky, found that "[d]ue to R hand impairment after being stabbed in the hand

extremity. (R. 77.) The ALJ found that assessment to have only "limited persuasive value" and declined to adopt the limitation to no handling, fingering, or feeling on the right. (*Id.* at 24.) In doing so, the ALJ reasoned that the limitation was inconsistent with objective findings showing 2–3/5 grip strength and only moderate limitations with handling and fingering, as well as Plaintiff's testimony that he could wash dishes, prepare simple food, and feed himself. (*Id.*)

That explanation is insufficient. The very evidence that the ALJ cited as inconsistent with Dr. Bilinsky's assessment arguably supports it. Dr. Haris Aleem's October 15, 2022, consultative examination documented a fixed flexion deformity of the fourth and fifth fingers of the right hand, obvious thenar and hypothenar atrophy, inability to make a fist with the right hand, inability to completely extend the fingers, 2–3/5 grip strength, and pain, numbness, and weakness in the right hand. (R. 432.) Dr. Aleem also stated that Plaintiff had trouble lifting, carrying, and handling objects because of right-hand weakness and flexion deformity. (*Id.* at 433.) As Plaintiff points out, Dr. Bilinsky relied on those clinical findings in assessing the more restrictive limitation. (Dkt. 18 at 19.) Yet, the ALJ did not explain why those abnormal findings undermined, rather than supported, Dr. Bilinsky's conclusion that Plaintiff could not use the right hand for handling, fingering, or feeling on a sustained work basis. Although the ALJ relied on Plaintiff's 2–3/5 grip strength and "moderate" handling and fingering limitations, those findings show only that Plaintiff retained <u>*some*</u> measurable function in his right hand.

The ALJ did not explain how the findings translate into the ability to perform fine and gross manipulation frequently throughout a workday. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[O]bserving that a person can perform simple and repetitive tasks says nothing about

---

multiple times in 08/2020, clmt should be limited to never [use] of R hand for fine and gross manipulations." (*Id.* at 77.)

whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift."). An ALJ may not simply summarize medical findings and substitute his own interpretation for a physician's opinion without explaining how the medical evidence supports the functional conclusion reached. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Nor may an ALJ determine the significance of particular medical findings without sufficient medical support where the decision turns on the meaning of those findings. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Here, the ALJ looked to the same abnormal examination findings considered by Dr. Bilinsky and reached a less restrictive conclusion without adequately explaining *why* the physician's interpretation was unpersuasive. *See Palmer v. Barnhart*, 40 F. App'x 278, 284 (7th Cir. 2002) ("While the ALJ need not evaluate every piece of testimony and evidence submitted, he must sufficiently articulate his assessment of the evidence to assure this court that he considered the important evidence and to enable this court to trace the path of his reasoning.").

The ALJ's discussion of Plaintiff's activities does not cure the problem. The ALJ relied on Plaintiff's ability to "wash the dishes, prepare himself something simple to eat, and feed himself." (R. 24.) But Plaintiff also testified that he avoided using his right hand, could only move his index finger and thumb, had pain from the hand to the forearm, and did not use the right hand to perform chores or activities at home except occasionally washing dishes. (*Id.* at 40–41, 45–47.) The consultative examination further recorded that Plaintiff could not button a shirt or tie shoelaces, used his left hand to brush his teeth and comb his hair, typed with one hand, and had trouble using

utensils and cutting meat. (*Id.* at 431.) The ALJ did not explain why the limited activities he cited were inconsistent with Dr. Bilinsky's limitation, particularly where many of those activities appear to have been performed with the unimpaired left hand or only occasionally by the right hand. An ALJ need not discuss every piece of evidence, but the decision must "provide some glimpse" into the reasoning and may not ignore an entire line of evidence contrary to the conclusion. *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

The Commissioner argues that the ALJ permissibly weighed conflicting evidence and reasonably relied on the consultative findings and Plaintiff's activities. (Dkt. 19 at 7–8.) But the issue is not whether the Court would weigh the evidence differently. Rather, the issue is that the ALJ did not adequately explain why the findings discussed above were inconsistent with Dr. Bilinsky's medical opinion limiting Plaintiff to no right-hand handling, fingering, or feeling. (R. 23–24, 432–33.) General statements about inconsistency are not enough when the Court cannot trace the path from the evidence to the conclusion. *See Alvino P. v. Saul*, No. 19-cv-1484, 2020 U.S. Dist. LEXIS 65006, at *25 (N.D. Ill. Apr. 14, 2020) ("The Court . . . doubts that the ALJ's boilerplate statements about inconsistency suffice."). Because the ALJ did not adequately explain how he evaluated the supportability and consistency of Dr. Bilinsky's assessment, the decision does not permit meaningful review. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018).

Nor is the error harmless. The ALJ's RFC allowed Plaintiff to perform fine and gross manipulation frequently, though not constantly, and to use the right upper extremity occasionally to pinch and assist the left upper extremity. (R. 24.) That RFC is materially less restrictive than the state agency physician's opinion that Plaintiff could not handle, finger, or feel with the right hand. (*Id.* at 77.) A proper evaluation of that opinion could alter the RFC and, in turn, the ALJ's conclusion at step five. The Court therefore cannot conclude with confidence that the same result would

follow on remand. *Cf. Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record . . . then remanding is a waste of time.").

To be clear, the Court makes no determination as to whether the state agency physician's opinion should be adopted or whether Plaintiff is disabled. The Court holds only that the ALJ failed to sufficiently articulate why he rejected Dr. Bilinsky's right-hand manipulative limitations. In light of the Court's decision to remand on that issue, the Court need not address Plaintiff's remaining arguments. The Commissioner should not, however, construe the Court's silence as an indication that the ALJ's initial adjudication was appropriate as to the outstanding issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. 18) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED: September 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge